## TOPPING BROTHERS & COMPANY
### *v.*
## FRITZ MAXE.

1. NEW TRIAL—*verdict contrary to the evidence.* Where a verdict seems to be manifestly against the evidence, it is the duty of the Supreme Court to reverse the judgment and have the facts passed upon by another jury.

APPEAL from the Circuit Court of Madison county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

This was an action of assumpsit originally brought in the Alton city court by the appellants against the appellee, and taken to the Madison Circuit Court by change of venue.

On the 12th of January, 1864, Maxe bought a bill of iron from Topping Brothers & Company. In the same month, J. H. Stephenson gave Maxe an order on Topping Brothers & Company, also for iron. The iron was delivered to Maxe on this order, and Maxe afterward settled with Stephenson for it. An order was given by Maxe on J. H. Stephenson & Company for the bill of 12th of January, 1864. This order was not stamped. Afterward, on the 4th of March, 1864, Maxe drew another order on J. H. Stephenson & Company, which became the foundation of this action. It is in these words:

"STANTON, March 4, 1864.

"Messrs. J. H. STEPHENSON & COMPANY: *Dear Sirs*—Please pay to the order of Topping Brothers & Company, for value received, five hundred and eighty-five $\frac{4}{100}$ dollars, for bill of iron sold me January 12th, 1864, and charge to account of

"Your ob't serv't,
"F. MAXE."

On the trial the foregoing order was offered in evidence, and the following was the testimony of the witnesses:

*H. Caldwell:* I presented that order to J. H. Stephenson & Co.; they said they would pay it in ten days; one of the

plaintiffs and myself then went to Maxe and asked him if he was willing to wait ten days, Maxe said he did not care; at the end of ten days I again presented the order to J. H. Stephenson & Co.; they did not pay it, and I so informed Maxe, who said he had nothing to do with it; I then returned the order to the plaintiffs; Paddock, one of the plaintiffs, told me there had been a previous order given by Maxe on Stephenson & Co. for the same goods; that it was void for want of a stamp, and he had got this order in lieu of it.

*John Nesbit:* In the last of March or first of April, 1864, I heard a conversation between Maxe and Topping and Paddock; Paddock told Maxe he had presented an order to Stephenson & Co., and they had not paid it; Topping told Maxe it had been standing long enough and must be settled; Maxe then said that the next time he came in the store he would pay it or give his note for it; I was present about ten minutes at that conversation; no amount was mentioned; Maxe said he would see it paid; don't know what bill was referred to; Maxe bought a bill of iron on the same day and paid for it.

*J. H. Stephenson:* In January, 1864, I gave Maxe, at his request, an order on Topping Bros. & Co. for a bill of iron; the iron was delivered to him on that order; I have settled with Maxe for it; the order of Maxe was never presented to me and I never saw it until Squire Caldwell called, but I did not see the order.

This last witness was called by appellee, who also offered in evidence the following letter:

"Alton, February 25, 1864.

"Messrs. J. H. Stephenson & Co., Gents: Yours of the sixth was duly received, in which you advise of intention to send us check in a few days for the d'ft of F. Maxe, $585. Not yet having received the same, we write requesting the remittance, and oblige, Yours respectfully,

"TOPPING BROS."

This was all the evidence. The jury found for the defendant.

Mr. Levi Davis, for the appellants.

Mr. J. H. Yager, for the appellee.

Mr. Chief Justice Walker delivered the opinion of the Court:

In this case the evidence shows that appellee, on the 4th of March, 1864, drew an order in favor of appellants, on J. H. Stephenson & Co., for $585.04. Caldwell testified that the order was presented to Stephenson & Co., who proposed to pay it if the time should be extended for ten days. Appellee was informed of the fact, and asked if he was willing to give the time, when he replied that " he did not care." At the expiration of the time, witness again presented the order, but it was not paid, and he informed appellee of the fact, when he replied that " he had nothing to do with it," and witness returned the order to appellants. This witness stated that one of the appellants informed him that an order had been previously given by appellee for the same goods, but not having the necessary government stamp it was void, and that he had obtained the order in controversy in lieu of the other. Witness stated that he understood that the goods were sold on order from J. H. Stephenson & Co. On the part of appellant, another witness testified that he was present at a conversation between two of the appellants and appellee, in the month of March or April, 1864, when the former informed the latter that they had presented the order, and it had not been paid, and appellee said he would pay it or give his note the next time he came into the store.

This witness further stated that he was present about ten minutes at that conversation; that no sum was named; but appellee said he would see it paid, but did not know what bill was referred to in the conversation. Appellee proved by Stephenson, upon whom the order was drawn, that he gave appellee an order on appellants for a bill of iron, in January, 1864; that the iron was delivered on that order, and he had settled with appellee for it; and the order was not presented to him, and he had not seen it until Caldwell had called.

Weide also testified that he was in appellee's shop when one of the members of appellants' firm came with a written instrument for appellee to sign, but he did not explain it, and witness thought there was some trouble or something wrong. Appellee then read in evidence a letter from appellants to Stephenson & Co., in which they say they had received a letter from Stephenson & Co. advising them that they intended to send them a check for the draft of appellee, for $585, and not having received it, they requested its remittance. This letter was dated the 25th of February, 1864.

On this evidence the jury found a verdict in favor of appellee. A motion for a new trial was entered by appellants, and overruled by the court. An exception was taken, and the case is brought to this court by appeal, and the assignment of errors questions the overruling of the motion for a new trial.

It is urged, in favor of the reversal of the judgment of the court below, that the evidence fails to support the verdict of the jury. There seems to be no doubt of the fact that the order was drawn, presented, payment refused, and appellee notified of the fact. This is *prima facie* sufficient to charge appellee. Then, has he shown such facts as rebut this apparent liability? He shows that Stephenson & Co. had given him an order for a bill of iron, but the amount of that order is not stated; but, if it had been, and had corresponded in amount with this order, we do not see that it released appellee from liability on this order. For aught that appears, he may have got iron of them on more than one occasion. This order was drawn by appellee on Stephenson & Co. and not by appellants on them. Again, his promise to pay it or give his note the first time he came in if it was not paid by Stephenson & Co. seems to refer to this order, as no other is shown to have been given. As he has not shown that he gave them a different order, the conclusion is inevitable that this is the order to which he referred. We cannot see that it could refer to an order given by Stephenson & Co. on appellants.

We are also at a loss to perceive how the letter of appellants to Stephenson & Co. asking them to pay the draft given

by appellee, could, in the remotest degree, prove that he had, in any manner, paid or discharged this order. It may have, and perhaps did, refer to the unstamped order; and, as the letter refers to a draft but four cents less than this, and it was written only seven days before this order was given, it would seem to be probable that such was the fact. There seems to be no pretense that Stephenson & Co. ever paid any portion of the order in controversy, or of the order about which the letter was written. Stephenson only says that he settled with appellee for the order drawn by him on appellants, not that appellee had settled with them, or that witness had paid them. But if, as is contended, the iron was obtained on the order of Stephenson & Co., and they have settled with appellee, as Stephenson swears, instead of paying appellants, it may be asked by what rule of law that would release appellee from paying for the iron he received of them, and for which he had drawn the order on Stephenson & Co. Having received the iron, he should either have paid Stephenson & Co. or appellants. If Stephenson & Co. were owing him, and gave the order as a mode of payment, but afterward paid him the money, or settled it in some other mode, and he agreed with appellants to pay them, and drew the order on Stephenson & Co., we are at a loss to perceive how he is released or why he should not pay the money; and, as we understand the case, such are the facts.

Nor do we see that any fraud was perpetrated on appellee by appellants in obtaining the order. If the one first given was unstamped, it had no binding effect and could not be enforced. Nor does this record show that it was not returned to appellee before this was given, and it is but reasonable to suppose that, in accordance with the usual course of business, he would not have given the latter until the former was taken up or destroyed. Nor can appellants recover upon the consideration for which that order was given, if it has been paid by giving this order or otherwise. The drawing and protesting payment of this order creates *prima facie* appellee's liability to pay it, and the evidence in this record is manifestly too loose

and uncertain to overcome that liability. It may be that the evidence does not appear in the record as it was before the jury, but, as it is presented to us, we think the case should be submitted to and passed upon by another jury.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*